**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Radial Spark LLC, | No. CV-23-00653-PHX-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| Talend Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Dismiss. (Doc. 9). For the following reasons, the Motion is granted.

**I.    Background**

On July 11, 2021, Plaintiff Radial Spark, an Arizona-based LLC, entered into a written Master Services Agreement ("MSA") with Defendant Talend, a Delaware corporation headquartered in California. (Doc. 1-3 at 4).[1] Under the MSA, Plaintiff agreed to supply Defendant with "tasks and services"—to be specified in subsequent Statements of Work ("SOWs")—in exchange for compensation. (Id. at 9-10). The MSA states that Plaintiff "shall comply . . . with all applicable [Defendant] rules, regulations, and policies." (Id. at 9). It also states, "[t]he services will be performed at the following facilities: REMOTE."  (Id. at 26) (capitals in original). After signing the MSA, the parties executed three SOWs: on June 20, 2021; June 7, 2022; and July 26, 2022. (Id. at 4-5).

Plaintiff alleges that it performed its duties in accordance with the MSA and the

---

[1] Plaintiff attached the MSA to its Complaint as an exhibit and Defendant does not dispute its authenticity.

three SOWs. (Id. at 5). Plaintiff alleges that Defendant failed to perform its duties by failing to compensate Plaintiff for the services Plaintiff provided and by wrongly disputing Plaintiff's invoices. (Id. at 6).

On March 30, 2023, Plaintiff filed its Complaint in state court, presenting claims for breach of contract and breach of covenant of good faith. (Doc. 1-3). On April 18, 2023, Defendant removed the case to federal court, based on diversity jurisdiction. (Doc. 1). On May 9, 2023, Defendant filed the present Motion. (Doc. 8). Plaintiff has filed a Response (Doc. 13) and Defendant a Reply (Doc. 14).

**II.   Discussion**

Defendant moves the Court to dismiss the Complaint on three grounds. (Doc. 9 at 1). First, for lack of personal jurisdiction under Rule 12(b)(2). (Id.) Second, for failure to state a claim upon which relief may be granted, under Rule 12(b)(6). (Id. at 1-2). Third, under either 12(b)(1) or (b)(6) because the MSA contains an arbitration provision. In the alternative, Defendant moves the court to stay proceedings pending arbitration. (Id. at 2).

**A.   Personal Jurisdiction**

A plaintiff bears the burden of establishing personal jurisdiction over the defendant. Ziegler v. Indian River County., 64 F.3d 470, 473 (9th Cir. 1995) (citing Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 912 (9th Cir. 1990)). A district court deciding a 12(b)(2) motion to dismiss without first holding an evidentiary hearing must determine whether the plaintiff presents a *prima facie* showing of jurisdictional facts. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 268 (9th Cir. 1995). Plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (quoting Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)). A plaintiff's version of the facts is taken as true unless directly contravened, and conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor. Id.

This Court may exercise personal jurisdiction over a defendant in a diversity action if Arizona's long-arm statute authorizes such an exercise and if such an exercise would be

consistent with the due process requirements of the United States Constitution. See, e.g., Fireman's Fund Ins. Co. v. Nt'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996). Arizona's long-arm statute permits jurisdiction over a non-resident defendant to the limits of the United States Constitution. See Davis v. Metro Prod., Inc., 885 F.2d 515, 520 (9th Cir. 1989). The statutory and constitutional considerations "therefore merge into a single due process test." Fireman's Fund, 103 F.3d at 893.

The due process clause of the Constitution requires that a defendant have minimum contacts with the forum state such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" See Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (citation omitted). "Minimum contacts are shown if the defendant has 'continuous and systematic general business contacts' with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." Morrill v. Scott Fin. Corp., 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-02 (9th Cir. 2004)).

**(i)  General Jurisdiction**

"General jurisdiction exists when a defendant's contacts with the forum state are so 'continuous and systematic' so as to render the defendant essentially 'at home' in that forum." Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp., 905 F.3d 597, 602 n.2 (9th Cir. 2018) (citing Daimler AG v. Bauman, 571 U.S. 117 (2014)). Typically, a corporation is considered 'at home' in the state in which it is incorporated and the state in which it has its principal place of business. Daimler AG, 571 U.S. at 137.

Plaintiff does not present a fully-formed argument that general jurisdiction exists here, instead simply noting in a footnote that, "upon information and belief," Defendant is a global company that provides services and products to every state, including Arizona, and that "such contacts *may* provide a basis for general jurisdiction . . . ." (Doc. 13 at 3 n.2) (emphasis added). The Supreme Court, in Daimler AG, rejected the argument that a company's sizable sales in multiple states establish general jurisdiction over the company

in each of those states. 571 U.S. at 118-119. Defendant is incorporated in Delaware and has its principal place of business in California. The fact that it allegedly provides services and sales in Arizona does not render it "at home" in the state.[2] This Court does not have general jurisdiction over Defendant.

### (ii)   Specific Jurisdiction

To assess whether a defendant has sufficient contacts with the forum necessary to establish specific jurisdiction, courts in the Ninth Circuit generally conduct a three-part inquiry, commonly referred to as the minimum contacts test. Freestream, 905 F.3d at 603. In order to establish specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Freestream, 905 F.3d at 603 (citing Schwarzenegger, 374 F.3d at 802)). The plaintiff bears the burden of satisfying the first two prongs of the test. Morrill, 873 F.3d at 1142 (citing Schwarzenegger, 374 F.3d at 802). If the plaintiff succeeds, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

Under the first prong of the test, a defendant has purposefully availed itself of the privilege of doing business in the forum state if it "'deliberately' . . . engaged in significant activities within a State." Burger King, 471 U.S. at 475-76 (quoting Keeton v. Hustler

---

[2] While significant sales in a state may be enough to establish *specific* jurisdiction, Plaintiff does not make this argument and does not allege any facts pertaining to Defendant's sales in Arizona. See Ayla, LLC v. Aly Skin Pty. Ltd., 11 F.4th 972, 981 (9th Cir. 2021) (finding that ten percent of sales to a forum, alongside defendant's marketing and operations, demonstrates that defendant purposefully availed itself of that forum).

Mag., Inc., 465 U.S. 770, 781 (1984)). There is no purposeful availment where a defendant's contacts with the forum state are "random," "fortuitous," or "attenuated." Id. at 475.

Plaintiff argues that Defendant purposefully availed itself of this forum. (Doc. 13 at 1). To support this argument, Plaintiff points to Defendant's performance of three acts, or sets of acts. (Id. at 1-6). First, while acknowledging that Defendant did not negotiate the terms of the agreement in Arizona, Plaintiff notes that it signed its agreement with Defendant in Arizona. (Id. at 4). Second, while Plaintiff acknowledges that Defendant did not have a physical presence in Arizona, it argues that Defendant "controlled the work of an Arizona citizen [Plaintiff] while that Arizona citizen was working with the State of Arizona." (Id. at 5). Third, Plaintiff notes that Defendant deposited payments into Plaintiff's bank, which is located in Arizona. (Id.) The Court will address each of these activities in turn.

First, the fact that Plaintiff signed the MSA in Arizona does not establish specific jurisdiction. Specific jurisdiction analysis requires a court to examine the actions of the defendant, not the plaintiff. As Plaintiff acknowledges, Defendant did not sign the agreement in Arizona. Further, "the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." Boschetto v. Hansing, 539 F.3 1011, 1017 (9th Cir. 2008) (citing Burger King, 471 U.S. at 478)).

Second, Plaintiff points to language in the MSA that it believes shows that Defendant controlled Plaintiff's work, work which was completed in Arizona. (Doc. 13 at 5). The MSA states that Plaintiff "shall comply . . . with all applicable [Defendant] rules, regulations, and policies." (Id). It also states, "[t]he services will be performed at the following facilities: REMOTE." (Id.) (capitals in original). Plaintiff does not provide any caselaw supporting its argument that such contractual language establishes specific jurisdiction.

Defendant counters that this language did not require Plaintiff to perform its work in Arizona. (Doc. 14 at 4). This point is well taken. The MSA does not mandate or even

foresee that Plaintiff performs its duties in Arizona—indeed, it does not reference the State of Arizona at all. Under the MSA, Plaintiff can perform such duties anywhere, remotely. The fact that Plaintiff chose to perform such duties in Arizona does not mean that Defendant purposefully availed itself of the privileges of doing business in Arizona. Similarly, the fact that Plaintiff's performance of its duties under the MSA had to comply with Defendant's rules, regulations, and policies is not evidence that Defendant purposefully availed itself of the privileges of doing business in Arizona. Again, nothing in the MSA mandates that Plaintiff perform such duties in Arizona and Plaintiff does not provide any authority for the proposition that its own citizenship in Arizona creates specific jurisdiction over Defendant.

Third, Plaintiff argues that Defendant's payments to Plaintiff, for invoices made pursuant to the MSA and subsequent SOWS, establish specific jurisdiction over Defendant because Defendant made these payments "directly into [Plaintiff's] bank located in Arizona." (Doc. 13 at 5). Again, Plaintiff provides no authority for the proposition that an out-of-state defendant's payment into a bank located in the forum state demonstrates that the defendant purposefully availed itself of the privileges of conducting business in the forum state. Neither is the Court able to locate any such authority.

Even taking these three activities together, Plaintiff has not alleged facts that, taken as true, demonstrate that Defendant purposefully availed itself of the privilege of doing business in Arizona. As such, Plaintiff has failed to meet the first prong of the minimum contacts test and the Court need not address the remaining two prongs. Plaintiff has failed to present a *prima facie* showing that personal jurisdiction exists and the Court must therefore grant Defendant's 12(b)(2) motion to dismiss for lack of personal jurisdiction.

### (iii)  Discovery

In its Response, Plaintiff requests that the Court allow jurisdictional discovery before granting Defendant's 12(b)(2) motion to dismiss. (Doc. 13 at 8-9). "Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" Butcher's

Union Loc. No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (quoting Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). "But a mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials are insufficient reasons for a court to grant jurisdictional discovery." LNS Enters. V. Cont'l Motors, 22 F.4th 852, 864-65 (9th Cir. 2022) (cleaned up) (quoting Boschetto, 539 F.3d at 1020 and Terracom v. Valley Nat'l Bank, 49 F.3d 555, 562 (9th Cir. 1995)).

Here, Plaintiff does not suggest any relevant facts that jurisdictional discovery might bring to light. Instead, Plaintiff simply refers to documents already before the court to reiterate its arguments as to the minimum contacts test. (Doc. 13 at 9). There are no readily apparent missing facts and no disputed facts. Plaintiff's request therefore appears to be based on a mere hunch. The Court will not allow jurisdictional discovery.

### B. Remaining Arguments

Because the Court will grant Defendant's Motion to Dismiss based on lack of personal jurisdiction, it will not consider Defendant's remaining arguments under (12)(b)(6) or (12)(b)(1).

## III. Conclusion

Because this Court does not have personal jurisdiction over Defendant, it will grant Defendant's Motion to Dismiss and dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2).

Accordingly,

**IT IS HEREBY ORDERED granting** Defendant's Motion to Dismiss. (Doc. 9).

**IT IS FURTHER ORDERED dismissing without prejudice** Plaintiff's Complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2).

///

///

///

///

**IT IS FURTHER ORDERED directing** the Clerk of the Court to terminate this action.

Dated this 21st day of June, 2023.

_____
Honorable Stephen M. McNamee
Senior United States District Judge